|   |   |   |
|---|---|---|
| 1 | | |
| 2 | | |
| 3 | | |
| 4 | | |
| 5 | | |
| 6 | | |
| 7 | | |
| 8 | UNITED STATES DISTRICT COURT | |
| 9 | WESTERN DISTRICT OF WASHINGTON AT SEATTLE | |
| 10 | ABRAHAM M., | |
| 11 | Plaintiff, | CASE NO. 2:20-cv-1357-TLF |
| 12 | v. | ORDER AFFIRMING DEFENDANT'S DECISION TO DENY BENEFITS |
| 13 | ACTING COMMISSIONER OF SOCIAL SECURITY, | |
| 14 | | |
| 15 | Defendant. | |

Plaintiff filed this action pursuant to 42 U.S.C. § 405(g) for judicial review of defendant's denial of plaintiff's applications for disability insurance benefits ("DIB") and supplemental security income ("SSI"). Pursuant to 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73, and Local Rule MJR 13, the parties have consented to have this matter heard by the undersigned Magistrate Judge. *See* Dkt. 15. This matter is fully briefed, without the optional reply. *See* Dkts. 26, 27, 29.

Despite plaintiff's contention the ALJ failed in the duty to develop the record, the Court is not persuaded where gaps in the record solely relate to a period of acute injury

from which plaintiff recovered. Although plaintiff was not represented by counsel until representation before this Court, any error in the failure to include some of the pages from the record, where the discharge note and the remainder of the treatment record allow for an adequate evaluation is harmless. Furthermore, this Court lacks jurisdiction to provide redress or even evaluate the propriety of the decision by the ALJ not to reopen plaintiff's earlier applications – therefore, plaintiff's claim regarding reopening is misplaced.

Because the Court also concludes the ALJ did not err when evaluating the medical evidence, and because any error within the ALJ's written decision is harmless, this matter must be affirmed.

### I.   FACTUAL AND PROCEDURAL HISTORY

On October 13, 2014, plaintiff first filed applications for DIB and SSI, alleging disability as of July 17, 2014. *See* Dkt. 20, Administrative Record ("AR") 12. The applications were denied on initial administrative review and on reconsideration. *See* AR 12. A hearing was requested but not held because plaintiff apparently failed to appear at the scheduled hearing and did not appeal the dismissal of the request for a hearing, making the March 19, 2015 reconsideration determinations the final administrative determinations regarding plaintiff's first set of applications. *See id.* The ALJ in the written decision under review herein denied plaintiff's request to reopen the prior DIB and SSI determinations. *See id.*

On January 25, 2017, plaintiff filed another set of DIB and SSI applications, "over a year past the prior initial determination, which is the starting port for calculating reopening periods," as stated by Administrative Law Judge M.J. Adams ("the ALJ"). *See*

1  AR 11. The ALJ held a telephonic hearing on April 15, 2020, following remand from the
2  Appeals Council after a previous Administrative hearing on July 22, 2019 before a
3  different Administrative Law Judge (who issued the remanded decision). *See* AR 11. In
4  the ALJ's April 28, 2020 written decision, the ALJ determined plaintiff to be not disabled.
5  *See* AR 26. Plaintiff again requested review, this time regarding the ALJ's April 20, 2020
6  written decision, said request being denied by the Appeals Council on August 4, 2020,
7  making the ALJ's April 20, 2020 decision the final decision of the Commissioner of
8  Social Security ("Commissioner"). *See* AR 1-5; 20 C.F.R. § 404.981, § 416.1481; *see*
9  *also* AR 8-33.
10        In plaintiff's Opening Brief, plaintiff maintains the ALJ erred: (1) in the duty to
11  develop the record; (2) in denying reopening of the prior applications; and (3) when
12  evaluating the medical evidence. Open, Dkt. 27, p. 1. Defendant disputes these
13  contentions. Response, Dkt. 29.
14                    II.     STANDARD OF REVIEW
15        Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's
16  denial of Social Security benefits if the ALJ's findings are based on legal error or not
17  supported by substantial evidence in the record as a whole. *Revels v. Berryhill,* 874
18  F.3d 648, 654 (9th Cir. 2017). Substantial evidence is "'such relevant evidence as a
19  reasonable mind might accept as adequate to support a conclusion.'" *Biestek v.*
20  *Berryhill,* 139 S. Ct. 1148, 1154 (2019) (internal citations omitted).
21                         III.    DISCUSSION
22        **A.  The ALJ did not err in the duty to develop the record.**
23
24

Plaintiff argues not only did the ALJ have a duty to develop the record, but also, here, "the ALJ was specifically ordered by the Appeals Council to 'update the record' . . . ." Open, 10. Plaintiff argues had the ALJ "studied the record, then he would have noticed that pages were missing in the records and ordered a full and complete set. This isn't just a page here and there. This is a very large amount of records." *Id.* Defendant contends the ALJ did update the record; and furthermore, regarding the gaps in the record, "this treatment period for an acute illness from which plaintiff recovered was not particularly probative of the question as to whether plaintiff was disabled," further characterizing the missing records as "not determinative of plaintiff's overall residual functioning during the relevant period." Response, 3. For the reasons discussed herein, and based on a review of the record as a whole, the Court finds the ALJ did not err.

The ALJ "has an independent 'duty to fully and fairly develop the record.'" *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001) (quoting *Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996) (quoting *Brown v. Heckler*, 713 F.2d 411, 443 (9th Cir. 1983) (per curiam))). The ALJ's "duty exists even when the claimant is represented by counsel." *Brown*, *supra*, 713 F.2d at 443 (citing *Driggins v. Harris*, 657 F.2d 187, 188 (8th Cir. 1981)). If a Social Security claimant is not represented by counsel, it is incumbent on "'the ALJ to scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts[, and ] be especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicted.'" *Higbee v. Sullivan*, 975 F.2d 558, 561 (9th Cir. 1992) (per curiam) (quoting *Cox v. Califano*, 587 F.2d 988, 991 (9th Cir. 1978)) (all other citations omitted). However, the ALJ's duty to supplement the

record is triggered only if there is ambiguous evidence or if the record is inadequate to allow for proper evaluation of the evidence. *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001); *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001) (citing *Smolen, supra*, 80 F.3d at 1288 (other citation omitted)).

First, updates exist in the record, and plaintiff has failed to demonstrate the ALJ did not follow the Appeals Council order regarding specific updates to the record referenced by the parties. *See* Open, 10; Response, 4-5.

Furthermore, the conclusions at the end of the acute period, as well as the treatment record, allowed the ALJ an opportunity for adequate evaluation despite some gaps in the record. As noted, the ALJ's duty to supplement the record is triggered only if there is ambiguous evidence or if the record is inadequate to allow for proper evaluation of the evidence. *See Mayes, supra*, 276 F.3d at 459-60; *Smolen, supra*, 80 F.3d at 1288 (other citation omitted)).

As noted by plaintiff, plaintiff was unrepresented at the time, and in Exhibit B14/F, pages 9-13, the record goes from page 70 to 87, then from page 88 to page 123. *See* AR 1729-33. However, as persuasively argued by defendant:

> [The d]ischarge summary notes from this period [present within the record] indicate plaintiff had sepsis, endocarditis, and associated complications, including acute heart symptoms and severe infection (internal citation to AR 1737). The ALJ acknowledged Plaintiff's hospitalization at this time and noted he had symptoms requiring intervening treatment during his hospitalization (internal citation to AR 15, 17, 18, 21). But this brief period of treatment for acute, serious illness was not determinative of Plaintiff's overall residual functioning during the relevant period. As the ALJ noted, the record does not reflect treatment for recurrent heart symptoms after Plaintiff's October 2017 hospital discharge (internal citation to AR 17, 21). And the evidence contains hundreds of pages of records following Plaintiff's hospital stay, including notes from a consultative examiner who reviewed Plaintiff hospital treatment records and assessed Plaintiff a few weeks after his hospital discharge, and offered her conclusion that Plaintiff retained

functioning consistent with the ability to perform light work (internal citation to AR 1692-98).

Response 3. Defendant's arguments are persuasive and supported by the record.

Plaintiff argues Dr. Anderson (*see infra* Section III.B), ordered x-rays at Skagit Valley Hospital but there are no records from Skagit Clinics from that time frame to show appointments or examinations. Open, 9 (citing B4F at 199-204). However, the Court finds more persuasive defendant's argument:

> Plaintiff's speculation fails to show any actual record gaps, or why the record was inadequate for the ALJ to render a finding. Dr. Anderson is, indeed, listed as the ordering physician for x-rays dated December 28, 2016 and early January 2017. (Internal citation to AR 1256-6). Yet Plaintiff fails to acknowledge that the record contains Dr. Anderson's examination notes from his December 28, 2016, examination. (Internal citation to AR 1050-56). Plaintiff fails to show that, when offering his opinion, Dr. Anderson relied on other findings that do not appear in the record. Moreover, the ALJ specifically asked Plaintiff whether there was anything missing from the exhibits. (Internal citation to AR 551). Plaintiff identified one treatment session he thought was missing, but the ALJ identified the relevant documents in the evidence. (Internal citation to AR 551-52). Plaintiff did not mention any other missing records. And Plaintiff, who now has legal representation and is in the best position to access his own records, has not provided any additional evidence for this Court to show there was outstanding, probative evidence that the ALJ needed to consider when assessing Dr. Anderson's opinions. Plaintiff's unsupported speculation fails to establish that the ALJ had some further duty to develop the record.

Response 4.

The Ninth Circuit has "long recognized that harmless error principles apply in the Social Security Act context." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (citing *Stout v. v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006)). An error is harmless if it is "'inconsequential to the ultimate non[-]disability determination.'" *Molina*, *supra,* 674 F.3d at 1117 (quoting *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008)).

1   Here, some pages are missing from the record. However, for the reasons

2 discussed herein, the Court concludes said error is harmless as the missing records did

3 not deprive the ALJ of an adequate ability to evaluate the record as a whole given the

4 discharge summary present in the record, as well as the other relevant record regarding

5 the acute period, and the hundreds of other pages referenced by defendant. *See*

6 *Mayes, supra*, 276 F.3d at 459-60. The absence of some records from the official

7 Administrative record, based on this particular record before the Court, is harmless, as it

8 is "'inconsequential to the ultimate non[-]disability determination.'" *See Molina*, *supra*,

9 674 F.3d at 1117 (quoting *Carmickle*, *supra*, 533 F.3d at 1162). There is no reason to

10 reverse and remand on this basis.

11         **B. Whether the ALJ erred in denying reopening of the prior**

12              **applications is nonreviewable by this Court.**

13   Plaintiff provides a brief argument that because "the ALJ erred in developing the

14 record, there is insufficient information to determine whether there was a basis to

15 reopen the record." Open, 10. Defendant argues "[a]bsent a colorable constitutional

16 claim, the ALJ's decision not to reopen the prior application is not subject to judicial

17 review." Response, 5 (citing AR 12; 20 C.F.R. § 404.903 (I); *Califano v. Sanders*, 430

18 U.S. 99, 108-09 (1977)).

19   "An ALJ's decision whether good cause has been shown, to entertain an

20 untimely hearing request or to reopen an earlier application, is strictly discretionary, not

21 final, and thus is not generally reviewable by a district court." *Smith v. Berryhill*, 2018

22 U.S. Dist. LEXIS 27088 at *7 (Case No 17-cv-647-RAJ) (W.D.Wash. Feb. 20, 2018)

23 (unpublished opinion) (quoting *Dexter v. Colvin* 731 F.3d 977, 908 (9th Cir. 2013).

24

Plaintiff's argument that because "the ALJ erred in developing the record, there is insufficient information to determine whether there was a basis to reopen the record," is unavailing for two reasons. *See* Open, 10. First, the Court already has found the ALJ did not err in the duty to develop the record, *see supra*, Section I. Next, the Court finds persuasive defendant's argument "[a]bsent a colorable constitutional claim, the ALJ's decision not to reopen the prior application is not subject to judicial review." Response, 5 (citing AR 12; 20 C.F.R. § 404.903 (I); *Califano v. Sanders*, 430 U.S. 99, 108-09 (1977)). Plaintiff has not alleged a constitutional claim regarding the decision not to reopen the prior application. *See* Open, 10. Therefore, the Court applies the general rule that a decision by an ALJ regarding "whether good cause has been shown to entertain an untimely hearing request or to reopen an earlier application is strictly discretionary, not final, and thus is not generally reviewable by a district court." *See Smith, supra*, 2018 U.S. Dist. LEXIS 27088 at*7 (Case No 17cv647RAJ) (W.D.Wa. February 20, 2018) (unpublished opinion) (quoting *Dexter, supra,* 731 F.3d at 908 (quoting *Califano, supra*, 430 U.S. at 109)); (citing 42 U.S.C. Sec. 405(g)). The Court finds no basis to reverse or remand based on this argument by plaintiff.

### C.  The ALJ did not err when evaluating the medical evidence.

Plaintiff contends that the ALJ erred when evaluating the medical evidence, such as the medical opinion evidence provided by Drs. Anderson and Shapiro. Open. 10-12. Defendant contends the ALJ reasonably weighed the medical opinions. Response, 6-10.

When an opinion from an examining or treating doctor is contradicted by other medical opinions, the treating or examining doctor's opinion can be rejected "for specific

and legitimate reasons that are supported by substantial evidence in the record." *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1996) (citing *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995); *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)). As noted by plaintiff, generally, "[g]reater weight is afforded to a treating physician's opinion because 'he is employed to cure and has a greater opportunity to know and observe the patient as an individual.'[internal citations omitted] *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (quoting *Sprague v. Bowen*, 812 F.2d 1226, 1230 (9th Cir. 1987))." Open, 7. As argued by defendant, the ALJ generally is not required to provide rationale for rejecting a medical source's report if they do "not reject any of [the doctor's] conclusions." *See Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1222 (9th Cir. 2010).

    A.  <u>Dr. Beverly S. Shapiro, M.D, examining physician</u>

The record reflects Dr. Shapiro examined plaintiff on or around November 28, 2017, and reviewed at least a portion of plaintiff's available record. *See* AR 1692-97. Dr. Shapiro noted plaintiff's chief complaints of complications from auto mobile accident; shortness of breath; fatigue; dizziness; and eyesight issues. *See* AR 1692. She indicated reviewing medical records regarding a car accident in July 2014 in which plaintiff "was the driver [and] apparently took his eyes off the road and hit a tree." *See id*. Dr. Shapiro further noted records from plaintiff's "recent[] admi[ssion] in September 2017 for sepsis, history of heroin abuse, pneumonia, MSSA [(sic, likely, Mersa, "MRSA")] bacteremia and endocarditis." *Id*. Dr. Shapiro concluded this section of her review of records with the statements: "Blood cultures were taken and [plaintiff] had a long history of long-term treatment with IV antibiotics. He had open heart surgery to repair the hole in his heart and to replace the valves." *Id*.

Dr. Shapiro included a summary regarding the history of plaintiff's present illness (at the time):

> [Plaintiff] had a MVA in 2014 with results of a fractured right ankle. Continued IV drug use with endocarditis and sepsis and admission for endocarditis and pneumonia and MSSA (sic). In 2017 he had open heart surgery to repair the hole in his heart and to replace his tricuspid and aortic valves.

AR 1693.

Dr. Shapiro noted plaintiff's past medical history as heart surgery, no known drug allergies, and medications of blood thinner, steroid inhaler, ibuprofen, and Suboxone. *See id.* She noted plaintiff's family history "is unremarkable," and his social history as last working in January 2013, smoking 6 cigarettes a day, denying use of alcohol, and currently living with family. *See id.* Perhaps most importantly, Dr. Shapiro then entered the physical examination portion of her examination as reflected in the report in which she indicated "Findings on physical examination are based upon formal testing as well as my observation of [plaintiff's] spontaneous action." *Id.*

Dr. Shapiro indicated plaintiff presented as "a 35-year-old, well-developed, well-nourished male who appears his stated age and is in no apparent acute distress. [Plaintiff] gets into the chair without difficulty and gets out of the chair without difficulty. There was no apparent ataxia or dyspnea noted." *Id.* Dr. Shapiro then indicates plaintiff's vitals. *See id.*

Next, the record reveals an extremely detailed examination report by Dr. Shapiro. *See* AR 1694-97.

For example, regarding the lumbar spine, Dr. Shapiro indicates in her report as follows:

> There is no tenderness to palpation in the midline or paraspinal areas. There is no CVA tenderness. No evidence of bruits. There is no muscle spasm and muscle tone appears to be equal throughout. There is no loss of lordosis. Straight-leg raising test is negative at 90°, tested in the seated position.

AR 1694.

Dr. Shapiro then includes motion testing results. *See* AR 1694-97. Dr. Shapiro indicated her conclusion of normal findings. *See id.* Based on this Court's review, it appears that every single range of motion finding was exactly normal. *See id.*

Dr. Shapiro indicated she observed plaintiff's gait to be "within normal limits." AR 1696. She also apparently observed plaintiff was "able to perform tandem gait[, plaintiff] is able to stand on h** heels and toes, squat, get on and off the examining table without difficulty[, and plaintiff] does not require the use of an assistive device to walk across the exam room." *Id.* Dr. Shapiro indicates in her examination notes she did not perform any of her own diagnostic tests from which she could diagnose any impairments. *See* AR 1697.

Near the end of her report, Dr. Shapiro provides her diagnostic impression:

> 1. Healed fracture right ankle, gait is normal. No functional limitation.
> 2. Shortness of breath not evident on today's exam. No functional limitations.
> 3. Fatigue not evident on today's exam. No functional limitations.
> 4. Dizziness. Not evident on today's exam. No functional limitations.
> 5. Eyesight. He did several different vision tests which were not consistent. Suggest ophthalmologic evaluation and perhaps new prescription glasses.
> 6. Also suggest he have a psychiatric evaluation and a neurologic evaluation.

*Id.* At the very end of her detailed report, Dr. Shapiro provided a functional assessment:

> Based on the examination today, [plaintiff] can lift and carry 20 pounds occasionally and 10 pounds frequently, stand and walk for 6 hours in an 8-hour day, and sit for 6 hours in an 8-hour day.

> His recent heart surgery suggests that he have a cardiologist clear him to return to work.
>
> There are no postural, manipulative, visual, communicative, or environmental limitations.
>
> [Plaintiff's] assessment is based on a physical examination performed by myself, as well as my observations during [plaintiff's] physical examination.

*Id.*

The ALJ reviewed the examination record from Dr. Shapiro and gave "significant weight as to the exertional range in this opinion, which is well supported by [plaintiff's] heart history, as noted by Dr. Shapiro, along with her wholly unremarkable examination findings." AR 22. The ALJ also found Dr. Shapiro's opinion regarding plaintiff's light exertional ability "is also consistent with the larger record, including evidence of mild cervical disc disease and a mild thoracic disc bulge but generally normal musculoskeletal and neurological findings." *See id.*

Based on a review of the record as a whole, the Court concludes these findings by the ALJ are based on substantial evidence in the record, including, for example, Dr. Shapiro's examination notes and findings. *See* AR 22, 1693-97. The Court also concludes the ALJ's findings of further limitation into the ALJ's residual functional capacity ("RFC") than found by Dr. Shapiro based on plaintiff's "vision impairment and history of atrial fibrillation and sincope," are based on substantial evidence. *See id.* The Court finds no error.

Finally, in the ALJ's written decision, the ALJ rejects Dr. Shapiro's opinion regarding the need for clearance by a cardiologist with a finding that although "this portion of [Dr. Shapiro's] opinion is supported by the very recent heart surgery at the

time of Dr. Shapiro's evaluation, the subsequent record, showing no ongoing evidence of cardiac dysfunction, obviates the need for such clearance." AR 22. These findings, too, are based on substantial evidence in the record as a whole.

The Court is aware of the difference between examining and treating doctors, and the standards afforded them. Again, the Court finds no error. Plaintiff's arguments to the contrary are not persuasive.

B.  Dr. Marshall Anderson, M.D., treating physician

Dr. Anderson evaluated plaintiff on December 28, 2016, noting plaintiff's chief complaints of chronic rib pain from his moving vehicle accident, chronic right ankle pain and vision worsening. See AR 1050-56. Dr. Anderson noted plaintiff's laboratory, imaging, range of motion, and other diagnostic test results as: x-rays, C-spine-degenerative disc disease, x-rays of right ankle-old tibia fractures and old rib fractures: as well as an MRI of the right ankle. See AR 1051. Dr. Anderson rated plaintiff's cervical degenerative disc disease as mild, and plaintiff's bone bruise of his right ankle as moderate, with moderate being a significant interference with the ability to perform one or more basic work activities including standing, walking, and crouching. See id.

Regarding the level of work plaintiff was capable of performing, Dr. Anderson indicated plaintiff was capable only of sedentary work, meaning the ability to lift 10 pounds maximum and frequently lift or carry lightweight articles, as well as being able to walk or stand only for brief periods. See AR 1052. There is a range of joint motion evaluation chart attached, but it does not appear to have been filled out or to reflect any assessment by the examining doctor, Dr. Anderson. See AR 1053. Regarding plaintiff's eyes, the doctor indicated that they were "not well visualized-probable bilateral

cataracts." *See* AR 1056. Other than this specific note, the remainder of his treatment report is simply a checklist indicating that the doctor checked the various systems. *See id.* No indication of what the doctor observed or assessed when examining the various systems is revealed in the treatment record. *See id.*

In the ALJ's written decision, the ALJ gave little weight to Dr. Anderson's opinion. *See* AR 22-23, 1050-56. In doing so, the ALJ included the following paragraph:

> In December 2016, Dr. Anderson, treating provider, completed a DSHS physical functional evaluation form. Dr. Anderson opined that [plaintiff] had moderate standing, walking, and crouching limitations and mild pushing, pulling, and reaching limitations, such that he could perform sedentary work (internal citation to B3F). I give this opinion little weight. This opinion has some minimal support from Dr. Anderson's reference to medical imaging showing cervical disc disease and history of ankle fracture and sprain, but Dr. Anderson did not complete the attached range-of-motion inventory or provide objective examination findings to further support the opinion. Dr. Anderson attached only [plaintiff's] self-reported medical history and a checklist of systems examined, without related findings. His opinion is also not consistent with the record as a whole, including generally normal findings as to strength, sensation, range of motion, gait, coordination, and normal heart rate and lung function.

AR 22-23.

First, regarding the ALJ's observations of the record itself, the Court already has noted Dr. Shapiro's extremely exhaustive review of the range-of-motion findings. The Court concludes substantial evidence supports the ALJ's finding "Dr. Anderson did not complete the attached range-of-motion inventory or provide objective examination findings to further support the opinion." *See* AR 22-23, 1050-56. Substantial evidence also supports the ALJ's finding "Dr. Anderson attached only [plaintiff's] self-reported medical history and a checklist of systems examined, without related findings." *See* AR 23, 1050-56. Finally, based on the Court's review of the record, the Court concludes substantial evidence supports the ALJ's final finding Dr. Anderson's "opinion is also not

consistent with the record as a whole, including generally normal findings as to strength, sensation, range of motion, gait, coordination, and normal heart rate and lung function." *See* AR 23, 1050-56; *see also* AR 15 (February 2018 denial by plaintiff of "other complaints, including neck pain and shortness of breath. The provider made normal findings, including normal gait and coordination, negative Romberg sign, normal motor strength and sensation throughout the extremities, normal heart and lung sounds, full orientation, normal oxygen saturation, and normal ear exam") (citing AR 1772-73).

As with the ALJ's review of Dr. Shapiro's opinion, the Court finds no reversible error here and no basis to remand this matter based on the medical evidence.

The Ninth Circuit has "long recognized that harmless error principles apply in the Social Security Act context." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (citing *Stout v. v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006)). An error is harmless if it is "'inconsequential to the ultimate non[-]disability determination.'" *Molina*, *supra,* 674 F.3d at 1117 (quoting *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008)).

To the extent there are any errors that have been brought to the attention of this Court, the Court finds them to be harmless.

## CONCLUSION

Based on the foregoing reasons, the Court hereby finds the ALJ properly concluded plaintiff was not disabled. Accordingly, defendant's decision to deny benefits is affirmed.

Dated this 19th day of October, 2021.

*Theresa L. Fricke*
Theresa L. Fricke
United States Magistrate Judge